UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Carolyn E. Strieter,

    Debtor.
_____/

Chapter 11

Case Number 14-56980

Hon. Mark A. Randon

## OPINION AND ORDER GRANTING DEBTOR'S MOTION TO SELL PROPERTY

**I.    INTRODUCTION**

Legacy Land Conservancy's ("LLC") mission is to protect local forests, prairies, farms, and waters. As a conservation strategy, LLC obtains easements from landowners to perpetually prohibit the development and improper use of the lands. In 2003, LLC purchased a conservation easement from Carolyn Strieter ("Debtor"), which encumbers two parcels of her farmland: all of Parcel A and half of Parcel B ("the Property").

Debtor's motion for approval to sell Parcel B, free and clear of liens, claims, encumbrances, and interests is pending.[1] LLC objects. It contends that the easement's provision: "Any division or subdivision of the Property is prohibited" means the Property cannot have more than one owner (i.e., a division of ownership). Because neither the

---

[1]The parties agree that Parcel B cannot be sold free of the conservation easement, because it perpetually runs with the land.

1

provision nor the conservation easement, read as a whole, suggests the parties intended such a restrictive interpretation, the Court **OVERRULES** LLC's objection and **GRANTS** Debtor's sale motion.

## II. BACKGROUND

Debtor owns 96.58 acres of land in Ann Arbor, Michigan. Since at least 1933, the land has been divided into two parcels: Parcel A is 56.58 acres; Parcel B is 40 acres and includes Debtor's family home and various outbuildings. The land has diverse soils; a history of productive farming; and contains wetlands and other natural habitat where fish, birds, and other wildlife thrive. These conservation values drew the attention of LLC.

On September 4, 2003, LLC paid Debtor $195,000.00 for a conservation easement.[2] The easement encumbers 77.12 acres: all of Parcel A and approximately half of Parcel B–it expressly recognizes both parcels by identification number. The conservation easement's purpose is to "protect the Property's natural resource and watershed values; to protect the Property's prime agricultural soils; and to maintain and enhance the natural features of the Property." It, therefore, prohibits non-agricultural uses of the land, such as commercial and industrial activities, construction, cutting vegetation,

---

[2]A "land conservation easement" is "[a]n easement arising from an agreement between a landowner and a land trust to provide for the protection of the land in its natural state while perhaps also allowing the property to be used for agricultural or low-impact recreational activities." BLACK'S LAW DICTIONARY 623 (10th ed. 2014). In Michigan, when an easement is granted to an appropriate governmental or charitable organization, a perpetual restriction of the property–enforceable against future owners–is permitted. MICH. COMP. LAWS § 324.2141.

2

land surface alteration, and dumping. Debtor retains all ownership rights not expressly restricted by the easement. This includes the right to sell the Property. The easement runs with the land and is governed by Michigan law.

Debtor filed Chapter 11 bankruptcy on October 28, 2014. As part of her effort to reorganize, she seeks the Court's approval to sell Parcel B pursuant to 11 U.S.C.§§363(b) and (f) of the Bankruptcy Code. LLC's objection turns on the interpretation of a single provision in the 15-page conservation easement: "Any division or subdivision of the Property is prohibited." LLC argues that the proposed sale would impermissibly create two owners–a division by ownership.[3] Debtor contends that the words "division" and "subdivision" relate strictly to the land–not to ownership. The Court agrees with Debtor.

## III. ANALYSIS

An easement is a limited property interest. *MDNR v. Carmody-Lahti Real Estate*, 699 N.W.2d 272, 284 (Mich. 2005). It is typically a right "to use the land burdened by the easement rather than to occupy or possess the land as does an estate owner." *Id*. A conservation easement is a type of negative easement: it is a right to *prohibit* certain uses of the land. *See Nature Conservancy, Inc. v. Sims*, 680 F.3d 672 (6th Cir. 2012).

---

[3]To further complicate matters, before filing bankruptcy, Debtor signed a land contract with Karl and Theresa Schenk for the sale of Parcel A. LLC notified the Schenks of its belief that the land contract violates the easement but terminated discussions when Debtor filed bankruptcy. Having already paid the majority of the $130,000.00 sale price, the Schenks seek the Court's determination that their purchase did not violate the easement. Although the Court's ruling is limited to Debtor's post-petition request for approval to sell Parcel B, the same reasoning applies to the Schenks' purchase.

3

Michigan courts interpret easements using contract law principles. *Wiggins v. City of Burton*, 805 N.W.2d 517, 530 (Mich. Ct. App. 2011). A contract is to be read as a whole, harmonizing all of its parts wherever possible. *Singer v. Goff*, 54 N.W.2d 290, 292 (Mich. 1952). A dictionary may be used to determine the plain and ordinary meaning of undefined words. *Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc.*, 730 N.W.2d 682, 687 (Mich. 2007). "The goal of contract interpretation is to first determine, and then enforce, the intent of the parties based on the plain language of the agreement." *Harbor Park Mkt., Inc. v. Gronda*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007).

A contract provision is unambiguous if–after considering the entire contract–it is susceptible to only one reasonable interpretation. *See Auto Owner Ins. Co. v. Olympia Entm't, Inc.*, ___ N.W.2d ___, 2015 WL 1366465 (Mich. Ct. App. Mar. 26, 2015); *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997). If a contract or provision is unambiguous, it must be enforced as written. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005).

Read as a whole, the conservation easement prohibits *uses* of the Property, which impair or interfere with the land's conservation values. There is no language that even suggests the easement was intended to restrict ownership of the Property, in perpetuity, to a single owner. To the contrary, the easement expressly acknowledges the Debtor's retention of "all ownership rights . . . In particular . . . the right to sell, mortgage, bequeath or donate the Property." Nor is the purpose of the conservation easement frustrated by multiple owners: the easement runs with the land and binds "[a]ll subsequent owners . . .

4

to all provisions of [] the Conservation Easement to the same extent as [] [Debtor]."[4]

When viewed in this context, the easement's provision is unambiguous. It can only reasonably be interpreted one way: to prohibit division or subdivision the Property into smaller parts (for development or sale, etc.). The definition of the words "divide" and "subdivide" support this conclusion: Divide means "to separate into two or more parts, areas or groups <divide the city into wards>"[5]; Subdivide means: (1) "to divide the parts of into more parts (2) to divide into several parts; *especially*: to divide (a tract of land) into building lots <he plans to subdivide his property>."[6] (Emphasis in original).

If the words "division" and "subdivision" were intended to restrict ownership, the easement should have expressly stated as much. *Sampson v. Kaufman*, 75 N.W.2d 64, 66-67 (Mich. 1956) (Michigan applies a strict construction upon restrictions placed upon the alienation of property). Indeed, since at least 2010, LLC's model conservation easement has been redrafted to expressly prohibit multiple owners. Because LLC drafted the easement, even if the Court were to find the provision ambiguous, it would be strictly construed against LLC. *Scott v. Farmers Ins. Exch.*, 702 N.W.2d 681, 684 (Mich. Ct. App. 2005).

At the time LLC purchased the conservation easement, Debtor's land had been

---

[4]Section R of the conservation easement does not change the Court's analysis–it simply states that it must be "liberally construed in favor of maintaining the Conservation Values of the Property[.]"

[5]http://www.merriam-webster.com/dictionary/divide (last visited May 5, 2015).

[6]http://www.merriam-webster.com/dictionary/subdivide (last visited May 5, 2015).

5

14-56980-mar    Doc 76    Filed 05/11/15    Entered 05/11/15 13:06:32    Page 5 of 7

divided into parcels A and B for more than 70 years.[7] The easement expressly acknowledges this fact. Debtor's proposed sale does nothing to *further* divide or subdivide the property, and the Court will not depart from the easement's plain meaning. *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846 (Mich. Ct. App. 1996) (courts defer to the plain and ordinary meaning and avoid technical or constrained constructions). LLC's objection is overruled.

Absent LLC's objection, the proposed sale satisfies 11 U.S.C. §§363(b) and (f). Section 363(b)(1) allows the trustee (in this case, the Debtor), after notice and hearing, to "use, sell, or lease other than in the ordinary course of business, property of the estate." Section 363(f)(3)-(4) allows a trustee to sell property free and clear of any interest if such interest is a lien and the selling price of the property is greater than all the liens on the property combined; or if such interest is in a bona fide dispute. The requirements of 363(f)(3)-(4) are met: the proposed sale price exceeds the value of all liens on the property. The Court approves the proposed sale.

---

[7]*See* Michigan's Land Division Act. MICH. COMP. LAWS § 560.101 et seq.

## IV. CONCLUSION

Debtor's sale motion is **GRANTED**. The purchaser takes Parcel B subject to LLC's conservation easement.

.

**Signed on May 11, 2015**

```
            /s/ Mark A. Randon
   Mark A. Randon
   United States Bankruptcy Judge
```

7